IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA – EASTERN DIVISION

| | |
|---|---|
| Jacob Erickson, | Court File No. _____ |
| Plaintiff, | **COMPLAINT** |
| MINN-DAK FARMERS COOPERATIVE, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## I.    INTRODUCTION.

Plaintiff Jacob Erickson (hereafter "Plaintiff" or "Erickson"), for his Complaint against Defendant Minn-Dak Farmers' Cooperative, a North Dakota domestic cooperative association (hereafter "Defendant" or "Minn-Dak"), states and alleges as follows:

## II.    PARTIES.

1.    Plaintiff Jacob Erickson is a former employee of Defendant and a current resident of the City of Wahpeton in the State of North Dakota, with his domicile at 17530 – 86th Street Southeast, Wahpeton, North Dakota 58075.

2.    Defendant Minn-Dak is a North Dakota domestic cooperative association, with its principal place of business at 7525 Red River Road West, Wahpeton, North Dakota 58075, and is qualified to conduct business in Minnesota and, at all times relevant to this matter, was doing business in Wahpeton, North Dakota.

## III.    JURISDICTION & VENUE.

3.    This Court has jurisdiction over this matter under 28 U.S.C.§ 1331, because it arises under the laws of the United States and has supplemental jurisdiction under 28 U.S.C.§ 1367.

4.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1), because the event, incidents and actions complained of in this matter occurred in the Eastern Division of the United

States District Court for the District of North Dakota. In addition, the above-named Defendant conducts business in the State of North Dakota.

### IV.    FACTUAL BACKGROUND.

5.    Plaintiff worked for Minn-Dak Farmers' Cooperative for approximately 17 years. At the time of termination, Plaintiff was a day shift Maintenance Supervisor.

6.    During his employment with Defendant, Plaintiff's spouse was also working for Defendant. However, she suffered from chronic migraines and had to go off duty for medical treatment. Unfortunately, on August 29, 2023, she was informed by Defendant that she had exhausted her job protected leave under the FMLA and was expected to return to work. Documentation was provided by Plaintiff's spouse that she was unable to return to work on September 28, 2023.

7.    During this time, Plaintiff also took time off to help care for the medical needs of his spouse. At first, he used his available Paid Time Off (hereinafter, "PTO"). However, his PTO eventually ran out and he required more time off to care for his spouse. First, Plaintiff attempted to use a PTO gifting program that Defendant had where coworkers could gift their own PTO to coworkers in need. However, Plaintiff was never given any such PTO hours from this program.

8.    Therefore, Plaintiff applied for Family Medical Leave Act ("FMLA") leave on October 23, 2023, to cover seven shifts that he would miss, in order to provide care for his spouse. On November 10, 2023, Defendant told Plaintiff that his request for FMLA was denied, as they alleged that the certification he provided was "inadequate." Plaintiff again requested FMLA leave on February 20, 2024, for nine days to provide medical care for his spouse. This was again denied by Defendant. Plaintiff submitted a revised Certification of Health Care Provider for Family Member's Serious Health Condition that complied with Defendant's demands, yet it was still

denied. At no point did Plaintiff receive FMLA leave to care for the serious and chronic condition of his spouse.

9.      On November 20, 2023, Plaintiff received a written disciplinary notice from Defendant. The cause of the disciplinary notice was that on two separate occasions when Plaintiff had arrived to work late. Plaintiff was surprised to receive written discipline, as according to Defendant's progressive disciplinary system as laid out in their Absentee/Tardiness policy, two occurrences of lateness should only result in coaching from Plaintiff's supervisor. Written warnings were not supposed to be given until four occurrences had happened.

10.      On April 30, 2024, Plaintiff injured his hand while assisting in the replacing large machine rollers. An employee shifted the roller from the other side that Plaintiff was working on, which crushed his hand and injured his thumb. A Safety Assistant had told him gloves were not required.

11.      In the spring of 2024, Plaintiff discussed with his coworkers the possible safety concerns that were present and currently unmitigated. Plaintiff then took this information and took it to Defendant's president to report the safety concerns.

12.      On June 3, 2024, Plaintiff was placed on administrative leave pending an investigation into his April 30, 2024, injury. As a result of this investigation, Plaintiff received a disciplinary notice on June 6, 2024, which informed Plaintiff of the results of the investigation and of his termination. Defendant listed several reasons for Plaintiff's termination, including failing to wear gloves at the time of injury, allegedly failing to fill out lock out tag out paperwork, the two (2) instances of tardiness, allegedly sending inappropriate emails, and one additional instance of tardiness on April 26, 2024.

13.     Plaintiff found inconsistencies in the provided reasons for his termination. Defendants alleged that Plaintiff sent over 12 emails that were inappropriate and caused "negative and toxic" outcome. It was also alleged that he was coached about these communications. However, at the time, Plaintiff was only coached on one issue, which was an email. At no point was Plaintiff made aware of or talked to about these alleged eleven (11) other "communications." In addition, as for the instances of tardiness, Plaintiff worked additional hours to make up for the missing time, and as per Defendant's progressive disciplinary structure, a third occurrence of tardiness would not even result in a written disciplinary notice, let alone termination. Finally, the allegations of improper filling out of lock out paperwork were untrue, as Plaintiff filled out all documentation for lock out tag out the way he was trained to, which is the same way his coworkers completed the process, and they were not disciplined.

14.     Based on these inconsistencies, Plaintiff alleges that his termination was retaliation for reporting safety concerns to Defendant.

15.     In addition, once Plaintiff was terminated, Defendant never provided the required notification of Plaintiff's right to continue his health benefits, through COBRA. Plaintiff has been denied continued insurance benefits through COBRA, when he and his wife needed them the most.

16.     As a result of Defendant's wrongful termination of Plaintiff's employment, Plaintiff has suffered lost wages and has suffered the loss of valuable employment benefits, in an amount to be determined.

### V.      CAUSES OF ACTION

### COUNT I:
### Wrongful Termination & Retaliation for Reporting Workplace Safety Issues

**(Occupational Safety and Health Act of 1970 ("OSHA");**
**Whistleblower Protection Act of 1989)**

17.    Plaintiff herby restates, realleges and incorporates the allegations set forth in paragraphs 1 through 16, as if fully set forth herein.

18.    Plaintiff engaged in protected activity by reporting workplace safety issues to his supervisors. Plaintiff reported the workplace safety issues to the company President prior to his termination.

19.    Approximately two to three weeks later, Plaintiff suffered an adverse employment action when Defendant terminated Plaintiff's employment on June 5, 2024.

20.    There is a causal connection between the protected activity and the adverse employment action because Plaintiff's termination occurred shortly after reporting the workplace safety issues, suggesting a causal link between the protected activity and the adverse action.

21.    Plaintiff claims the reasons for termination are merely pretextual, as the reasons provided were not worthy of termination as per the Defendant's progressive disciplinary policies.

22.    However, Defendant's action violated the Whistleblower Protection Act of 1989. Terminating an employee for reporting workplace safety issues is retaliation *per* se and is prohibited under the Act. Plaintiff seeks his lost wages, lost benefits and any other available damages at law or in equity, based on the Act. Plaintiff seeks all available remedies and damages which the law may allow, including but not limited to, attorney's fees and costs.

**COUNT II:**
**Family and Medical Leave Act ("FMLA") Violation**
**(29 U.S.C. § 2612 (2024))**

23.    Plaintiff herby restates, realleges and incorporates the allegations set forth in paragraphs 1 through 22, as if fully set forth herein.

24.     Defendant is an employer covered under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612 (1993), as amended.

25.     Plaintiff is an eligible employee under the FMLA. Plaintiff's spouse has been diagnosed with a serious medical condition, and Plaintiff was required to take time off from work to care for her medical needs. Plaintiff had used all his PTO and required the use of FMLA leave to cover his remaining shifts. Plaintiff was entitled to take FMLA leave and provided proper notice to defendant of the need for FMLA leave, pursuant to subsection (e)(1). *Id.*

26.     Defendant denied plaintiff FMLA benefits to which plaintiff was entitled, violating 29 U.S.C. § 2612. Plaintiff seeks all available remedies and damages which the law may allow, including but not limited to, attorney's fees and costs.

### COUNT III:
### Violation of COBRA Notification Requirements
### (42 USC § 300bb-6)

27.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 26, as if fully set forth herein.

28.     Plaintiff was a qualified beneficiary under a group health plan administered by Defendant. Plaintiff was covered under the group health plan up to Plaintiff's termination. Plaintiff's termination is a qualifying event that triggered Plaintiff's right to COBRA continuation coverage.

29.     Defendant was the plan administrator responsible for providing a COBRA notification. As the plan administrator, Defendant had a legal obligation to provide a timely and adequate COBRA notification to Plaintiff of the option to continue group health insurance coverage at his own cost and expense for up to eighteen (18) months after termination.

30.    Defendant failed to provide a timely and/or adequate COBRA notification as required by law. Defendant further failed to provide Plaintiff with the required COBRA notification within the timeframe specified by law.

31.    As a result of Defendant's failure to provide proper COBRA notification, Plaintiff has suffered damages, including but not limited to loss of opportunity to elect continuation coverage, out-of-pocket medical expenses, and other financial losses.

## JURY DEMAND

32.    Plaintiff demands a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

1.    Adjudging that Defendant is liable to Plaintiff for their actual damages in an amount to be proven at trial, including but not limited to front pay, back pay, statutory penalty, interest, compensatory damages, including but not limited to negligent or intentional infliction of emotional distress, and any other damages or penalties which may be available at law;

2.    Awarding Plaintiff pre-judgment and post-judgment interest in connection with any recovery or damages;

3.    Awarding Plaintiff their reasonable attorney's fees, costs and disbursements and any other relief permitted by law; and

4.    Any other or further relief, as may be deemed just and equitable by the Court in its discretion.

*[Remainder of page intentionally left blank; signature page follows.]*

Respectfully submitted,

**RIVER VALLEY LAW PA**

Dated: April 10, 2025

 *s/ Sarah R. Jewell*
Sarah R. Jewell (#09950)
Zachary C. Burmeister (#07709)
3523 – 45th Street South, Suite 100
Fargo, North Dakota 58104
(701) 612-2777
sjewell@rivervalleylaw.com
zburmeister@rivervalleylaw.com

*Attorneys for Plaintiff*